## CIRCUIT COURT OF WISE COUNTY
## AND THE CITY OF NORTON

Commonwealth of Virginia

v.

Roger C. Balthis, Jr.

October 16, 2015

Case No. F15-247

By Judge Chadwick S. Dotson

This matter comes before the Court on Defendant's Motion To Suppress Statements of the Defendant and Physical Evidence. On August 31, 2015, Defendant filed a motion in limine seeking suppression of evidence on the ground that such evidence was obtained as the result of unlawful detainer and seizure directed at Defendant, in violation of his constitutional rights under the Fourth and Fourteenth Amendments.

On October 9, 2015, the Court took evidence and heard argument on the motion, and, thereafter, took Defendant's motion under advisement. After having carefully reviewed the case and submissions by counsel, the Court makes the following ruling.

### Overview

On February 7, 2015, Captain Jeff English of the Pound Police Department was approached by an individual while sitting in his patrol car in the parking lot of the Pound Town Hall. The individual informed Captain English they had observed Defendant in town and that he appeared to be high. After receiving such information, Captain English drove through town and spotted Defendant standing outside Pixie's restaurant with a female. He proceeded to pull the patrol car over and approached the two individuals. According to Captain English, Defendant would not respond to any questions and, after about sixty seconds, Defendant turned to walk away.

Captain English stated that he told Defendant to stop and that he needed to speak with him. When Defendant continued walking, Captain English told him to stop once more, but he continued walking. At that point, Captain English stated that Defendant began picking up pace, which is when he grabbed the sleeve of Defendant's jacket. Defendant was placed in handcuffs and detained in order to investigate further. Captain English said Defendant made some incomprehensible statements before, all of a sudden, he looked up and said, "I have a meth lab in my pocket." Captain English then asked where the meth lab was, and Defendant indicated nonverbally that it was in his pocket. Captain English observed what appeared to be the top of a Gatorade bottle, and English removed it from Defendant's pocket.

### Seizure

The law is clear that a tip must exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). In order to rely solely on information from an informant, even where the identity of the informant is known, there must be some corroboration or indicia of reliability — some evidence that "demonstrates the informant's basis of knowledge or veracity." *Id.* In discussing the Fourth Amendment's requirements, the Supreme Court has stated: "If police officers may properly conduct *Terry* frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain . . . that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. [T]he Fourth Amendment is not so easily satisfied." *Florida v. J.L.*, 529 U.S. 266, 273, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).

Here, Captain English, acting in response to the information received from the individual, engaged in an investigatory detention of Defendant. "[A] person is 'seized' [for purposes of the Fourth Amendment] when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). Defendant was seized at the moment Captain English grabbed his arm. The Court finds the evidence insufficient to give rise to the reasonable suspicion that would warrant seizure based solely on the informant's information.

Therefore, some corroboration is required. The Commonwealth is unable to point to any such evidence. In fact, at the time the officer placed this Defendant into custody, he had observed nothing that would corroborate the "tip" he had received. Captain English's testimony was that Defendant "stood still, did not say anything." The closest he came to offering any corroboration was that Defendant's "eyes just seemed to be more open, if you will" and that he "seemed a little anxious, or nervous." Further, it is instructive that the officer didn't charge Defendant with being intoxicated in public; had the officer observed enough to support such a

charge, it would also be evidence that would corroborate the informant's information. Certainly, this is insufficient as a matter of law to establish reasonable, articulable suspicion.

Here, Defendant was taken into custody based on a tip that was not corroborated, combined with the fact that Defendant would not talk to the officer and walked away from him. The Fourth Amendment to the United States Constitution and Article 1, Section 10, of the Constitution of Virginia permit individuals to refuse to answer police questions and/or walk away in silence under these circumstances.

### Good Faith Exception to Exclusionary Rule

The Court considered the Commonwealth's argument that the good faith exception to the exclusionary rule applies in this case and that it would frustrate the purposes of the exclusionary rule were the Court to suppress this evidence.

The purpose of the exclusionary rule is to deter police misconduct. *Adams v. Commonwealth*, 275 Va. 260, 657 S.E.2d 87 (2008) (citing *United States v. Leon*, 468 U.S. 897, 916, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). The basis of the good faith exception to the exclusionary rule is that the intended purpose of the rule is defeated where the officer acts in good faith, because suppressing the evidence under such circumstances would have no deterrent effect. *See United States v. Peltier*, 422 U.S. 531, 539, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975) ("Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.") (internal quotations omitted). While the Court was very impressed with Captain English's truthfulness on the witness stand, his actions here were not in good faith. The good faith exception does not operate as a means to ignore the fact that there was not sufficient reasonable suspicion to detain Defendant in the first place. As a matter of fact, this type of conduct on behalf of the police, an unlawful seizure of a person without reasonable suspicion, is precisely the type of conduct that this Court hopes to deter.

The action taken here, the Government placing a citizen of the Commonwealth of Virginia into custody based upon nothing more than a "tip" that had no indicia of reliability, cannot and will never be endorsed as appropriate by this Court. It is, flatly, an unconstitutional detention. Individuals have a right to be free from unreasonable searches and seizures in this great Commonwealth.

### Conclusion

The Court considered the totality of the circumstances, and finds that, based on the evidence presented before the Court, there was not reasonable, articulable suspicion to detain Defendant. At some point after Defendant

was detained, he stated to Captain English: "I have a meth lab in my pocket." As a result of this statement, Captain English discovered and seized the Gatorade bottle. But for the unlawful seizure, neither the statement nor the physical evidence would have been obtained; it was very clear from the Commonwealth's own evidence that Defendant did not wish or intend to speak with the officer. "That the allegation . . . turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting [Defendant] of engaging in unlawful conduct.The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). The Court finds that the evidence was obtained in violation of Defendant's constitutional rights. Defendant's Motion To Suppress Statements of the Defendant and Physical Evidence is sustained.